IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF WYOMING

In re                                                    )
                                                         )
    BRIAN D. PULSIPHER and           )    Case No. 09-20084
    VICKY S. PULSIPHER,              )    CHAPTER 13
                                                         )
    Debtors.                         )

FILED

3:04 pm, 5/13/09

Tim J. Ellis
Clerk of Court

## OPINION ON WCAMP, F.L.L.C.'S MOTION TO MODIFY STAY

On April 28, 2009, this matter came before the Court for an evidentiary hearing on Wcamp, F.L.L.C.'s ("Wcamp") Motion to Modify Stay and the Debtors' objection. The parties were represented as stated on the record. The Court having reviewed the record, testimony and evidence presented at the hearing, and considered the arguments of the parties, is prepared to rule.

The Debtors executed a Contract for Deed and Escrow Agreement ("Contract") with Wcamp on August 18, 2006 for the purchase of real property described as follows:

> Lot 6, "South Park Ridge Subdivision", Natrona County Wyoming according to the plat recorded March 21, 2005 as Instrument No. 762818. Excepting therefrom South Park Road as it appears on plat recorded March 21, 2005 as Instrument No. 762818, together with all buildings and other improvements situate thereon, and subject to all plats, restrictions, covenants, encumbrances, and reservations of record, and further subject to all rights of way, encroachments, road ways, and easements of record or as may in fact exist and are apparent from inspection of the property (hereinafter called the "property" or the "premises").

The sale price of the property was $30,000. Debtors deposited $500 as an earnest money payment with the Wcamp leaving a balance of $29,500 due, with an interest rate

of ten percent (10%) per annum to be paid in monthly payments of $300 beginning September 18, 2006 and thereafter due on the eighteenth day of each month until August 11, 2011. At that time one (1) balloon payment was due in the amount of $25,605.49. Under the Contract, the Debtors were also required to pay the taxes and insurance on the property.

Soon after purchasing the real property, on September 11, 2006, the Debtors purchased a 2007 Liberty manufactured home from East Side Homes ("East Side"). The purchase price was $94,795.00. Mr. Pulsipher testified that the Debtors paid East Side a down payment of $19,000, leaving a balance of $65,000 due upon delivery. However, upon delivery there were problems with the manufactured home, including missing counters in the kitchen and a window. The debtors withheld approximately $9,000 toward the final payment to resolve the issues. The issues were never resolved and the $9,000 was still owing to East Side. The manufactured home was placed on a foundation and affixed to the real property.

Wcamp filed this motion for relief from stay after having enforced the Contract prior to the Debtors filing for bankruptcy protection. Jon Nicolaysen, ("Nicolaysen"), the manager of Wcamp, testified that the debtors previously defaulted on payments under the Contract, but had worked out payment arrangements to get caught up. However, this time, Wcamp chose to invoke the default provisions of the Contract when, Nicolaysen discovered that the debtors had: (1) not made a payment to Wcamp since October 2008;

(2) he became aware that the 2007 property taxes were delinquent when he saw the notice that the property was going to be sold at a tax sale; (3) he discovered that the debtors had hired T&T Drilling Co., Inc. ("T&T") to drill a well and install a pump and had not paid for the services; and (4) the Debtors still owed East Side.  Mr. Nicolaysen paid the property taxes to protect the property from a sale.

Wcamp mailed a Notice of Default and Intent to Forfeit and Demand for Payment ("Notice") to Debtors on December 3, 2008 to the address indicated on the Contract and also to an address in Evansville, Wyoming, by certified mail, return receipt requested.  On January 15, 2009, after the time for the Debtors to cure had passed, East Side assigned its interests in the manufactured home contract to Wcamp.  Also on January 15, 2009, when the Debtors did not cure the default, Wcamp terminated the Contract, and recorded the Quit Claim Deed.  The Debtors filed for Chapter 13 bankruptcy protection on February 10, 2009 listing the real property as an asset of the estate.  Wcamp filed its motion for relief from stay for cause, alleging that neither the Debtors nor the bankruptcy estate have an interest in the property as the property reverted to Wcamp under the terms of the Contract prior to the Debtors filing for bankruptcy protection.

Under Wyoming case law, courts interpret contracts to effectuate the parties' intention, as expressed in the language of the agreement.[1]  As long as the contract language is clear and unambiguous, the court's obligation is to interpret it as a matter of

---

[1] *Reynolds v. Milatz*, 161; P.3d 509, 513 (Wyo. 2007) citing *Ahearn v. Hollon*, 53 P.3d 87, 91 (Wyo. 2002).

law.[2] Wyoming law does not favor forfeiture of contractual rights.[3] Before a party can declare a forfeiture, he must establish he has a clear right to terminate the contract and he must be free from blame. Moreover provisions for forfeiture may be waived and the courts are quick to take advantage of circumstances indicating such an intention. In order to establish a prima facie case of waiver, the buyer must establish that the seller "has condoned or assented to previous defaults and has not given notice of this intention to insist on strict compliance in the future."[4] The court in *Ahearn*[5] stated that after competent parties have solemnly contracted and agreed to certain conditions, courts should exercise restraint in nullifying the terms thereof or rewriting the contract.

The default provisions of the Contract state, as relevant:

> "Time shall be considered of the essence concerning this agreement and all of its provisions, and the occurrence of any of the following shall constitute an 'Event of Default':
> a) If the Buyer fails, refuses or neglects to make any payment with <u>fifteen (15)</u> calendar days of the date it is to be made by the Buyer under the terms of this agreement.
> b) If the Buyer fails, refuses, or neglects to perform or breaches any other term, covenant, or provisions of this agreement.
> c) If the Buyer becomes insolvent or unable to pay debts as they mature or makes an assignment for the benefit of any creditor."

---

[2] *Id.*

[3] *Reynolds* citing *Angus Hunt Ranch, Inc. v. REB, Inc.*, 577 P.2d 645, (Wyo. 1978).

[4] *Id.*

[5] *Ahearn v. Ahearn*, 993 P.2d 942, (Wyo. 1999).

The Seller's remedies, under the Contract, in the event of default are:

> "In order to exercise any remedies following an Event of Default, the Seller shall give written notice to Buyer specifically describing the Event of Default and stating what must be done in order to cure such default. If the Buyer fails, within <u>fifteen (15)</u> days following the date such notice is given, to (1) make any payment demanded, or (2) if the default involves a breach other than the payment of money, to reasonably and immediately undertake to cure such default in a reasonable and expeditious manner, then the Seller shall have the right, without further notice to the Buyer, to: a) Take immediate control and possession of the property; ...c) Recover all of the escrow papers..."

Under the Contract, notices are to be provided, as stated:

> "All notices required to be given to the parties shall be sent to the addresses as listed below. Proof of mailing of such notices shall perfect all notices and each party shall notify the other in writing of any change of address:
> Seller:     Wcamp, F.L.L.C.
>             (Address)
>
> Buyer:      Brian D. Pulsipher and Vicky S. Pulsipher
>             (Address)

Any notice to be given herein shall be deemed given on the day such notice is placed in the U.S. Mail, certified, return receipt requested, to the last known address of the addressee whether or not the letter is accepted by the addressee, or on the date such notice is actually delivered to the addressee, if given by any means other than certified mail.

The Contract also states: "The failure of either party to declare a default or to enforce their respective rights under this agreement shall not be construed as a waiver by such party of this right to do so for such any subsequent default or violation."

The Contract provisions concerning debtors' default and the procedures to be

followed between the Debtors and Wcamp are clear and unambiguous. This court, in applying the terms of the Contract to the case before it finds that the debtors were delinquent in monthly payments which constituted an "Event of Default." Additionally, the Debtors failed to pay the taxes for the second half of 2007. This is defined as an "Event of Default" under the Contract as the Buyer/Debtors failed to perform "any other term...of this agreement." The Debtors were responsible to pay the taxes under paragraph 4 of the Contract. It also appears to the Court, that the Buyer/Debtors were "unable to pay debts" when they failed to pay T&T Drilling for the services related to the well drilling. The payment still owed to East Side, does not appear be a "failure or refusal" by the Debtors to pay the Debt, but a lack of follow-up by the Debtors and East Side, insuring that the windows, counters, and other missing items from the manufactured home were completed before paying the final $9,000 and completing that contract. In any event, any one occurrence of the above, constitutes an "Event of Default" under the Contract that Wcamp could rely upon to initiate default proceedings. Wcamp had a clear right to terminate the contract.

The next issue becomes if Wcamp is free of blame in terminating the Contract. Debtors argued that Wcamp had waived the terms of the Contract previously and allowed the Debtors to work out payment arrangements to get current. In this instance, the Notice specifically addresses previous defaults, stating: "You have been in default on numerous occasions since entering the Contract, but we have always been extraordinarily patient

through the process. You should not ignore your default any longer." Following the Wyoming court's analysis in *Angus Hunt*[6], this court finds that Wcamp demanded that the Debtors become current "within 15 days from the date of this notice, which is December 18, 2008." Wcamp provided the Debtors notice of its intention to insist on strict compliance and gave buyers a reasonable time, under the contract, within which to perform or cure continuing defaults.

Debtors argue the amount indicated as the required payment to cure was incorrect on the Notice and therefore the Notice was ineffective. The Notice demanded that the Debtors pay the entire Contract amount and attorney's fee; and pay East Side Homes and T&T Drilling Co. in full by the deadline. The Wyoming Court in *Ahearn*[7], addressed this very issue. The Court determined that the notice must inform the defaulting party of the manner in which he breached the contract and the performance necessary to cure the default. In that case, the Court determined that the miscalculations of the seller in the notice did not make the notice ineffective.

In the case before this court, the Notice stated multiple events of default, which were discussed above. The demand to cure was inaccurate in that it demanded the Debtors pay their entire amount of the Contract and pay the debts to East Side and T&T Drilling. However, the Notice also cited the corresponding paragraphs of the Contract to

---

[6] *Angus Hunt Ranch, Inc.* at 650.

[7] *Ahearn* at 92.

inform the Debtors of the manner in which to cure. The Debtors did not submit those amounts to Wcamp during the period allowed under the Contract and Notice. The notice fully satisfied the provisions of the Contract and triggered the remedies under the default clause. The Debtors were in default and failed to cure the default in the time established by the Contract and set out in the Notice causing the termination of the Contract under its terms.

In accordance with the Court's holdings above the Court shall enter a judgment by separate order.

DATED this _13_ day of May, 2009.

By the Court

HONORABLE PETER J. MCNIFF
United States Bankruptcy Judge

Service to:
    Hampton Young, Jr.
    John Patton
    Mark Stewart